UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-2225

 ACTION FOR CHILDREN'S TELEVISION,

 Petitioner,

 v.

 FEDERAL COMMUNICATIONS COMMISSION, ET AL.,

 Respondents.

 

 COALITION ON SMOKING OR HEALTH,

 Intervenor.
 

 ON PETITION FOR REVIEW OF AN ORDER
 OF THE FEDERAL COMMUNICATIONS COMMISSION

 

 Before

 Boudin, Circuit Judge,
 
 Campbell, Senior Circuit Judge,
 
 and Stahl, Circuit Judge.
 

 

Sharon L. Webber with whom Angela J. Campbell and Henry Geller
 
were on brief for petitioner and intervenor.
C. Grey Pash, Jr., Counsel, Federal Communications Commission,
 
with whom Renee Licht, Acting General Counsel, Federal Communications
 
Commission, Daniel M. Armstrong, Associate General Counsel, Federal
 
Communications Commission, Robert B. Nicholson, Attorney, United
 
States Department of Justice, and Marion L. Jetton, Attorney, United
 
States Department of Justice, were on brief for respondents.

 

 July 22, 1993
 

 BOUDIN, Circuit Judge. Action for Children's Television
 

("ACT") petitions for review of the decision of the Federal

Communications Commission denying ACT's request that the FCC

take action to combat "hidden commercials" on television that

promote smoking. We deny the petition. 

 In 1966, acting on a private citizen petition, the FCC

required broadcasters, under the "fairness doctrine," to air

anti-smoking messages in response to advertisements by

cigarette companies. See Banzhaf v. FCC, 405 F.2d 1082 (D.C.
 

Cir. 1968), cert. denied, 396 U.S. 842 (1969).1 In 1969,
 

Congress enacted the Cigarette Labeling and Advertising Act

("the Cigarette Act"), 15 U.S.C. 1331 et seq., which
 

pertinently provided that "it shall be unlawful to advertise

cigarettes or little cigars over any medium of electronic

communication subject to the jurisdiction of the Federal

Communications Commission." 15 U.S.C. 1335. 

 In 1970, an organization called Action on Smoking and

Health ("ASH") petitioned the FCC to require broadcasters to

continue to air anti-smoking messages, despite the

prohibition contained in the Cigarette Act, partly on the

ground that the cigarette industry was using "hidden

 

 1The fairness doctrine was an FCC rule requiring
broadcasters to air contrasting views when controversial
issues were addressed. See Red Lion Broadcasting Co. v. FCC,
 
395 U.S. 367 (1968). The rule was abandoned by the
Commission in August 1987. See Syracuse Peace Council v.
 
FCC, 867 F.2d 654 (D.C. Cir. 1989), cert. denied, 493 U.S.
 
1019 (1990). 

 -2-

commercials" to circumvent the Act. The quoted phrase, as

ACT uses it, refers to cigarette company sponsorship of

sporting events during which the cigarette brand name or logo

is displayed on signs or banners, which in turn are broadcast

during televised coverage of these events, such as the

Marlboro Grand Prix auto race and the Virginia Slims tennis

tournament. The FCC denied the ASH request. The agency said

that it found no hard evidence of the use of "hidden

commercials" by the cigarette industry, and concluded that

"if such abuses do occur . . . , the appropriate action in

such an eventuality would be to secure full and effective

compliance with the 1969 law, and not to deal with it by

offsetting anti-smoking messages." Formulation of
 

Appropriate Further Regulatory Policies Concerning Cigarette
 

Advertising and Antismoking Presentations, 27 F.C.C.2d 453,
 

458 n.5 (1970). 

 In 1990, ACT filed with the FCC the petition at issue in

this case. ACT claimed that there is now indisputable

evidence that the cigarette industry is using "hidden

commercials." According to the petition the Department of

Justice has never initiated any enforcement proceedings under

the Cigarette Act and therefore appears to have concluded

that hidden commercials do not violate the statute, creating

the need for FCC action. ACT requested the FCC to issue a

"declaratory ruling" requiring licensees to air anti-smoking

 -3-

messages to offset the harm caused by the hidden advertising.

Because the fairness doctrine was no longer in existence, ACT

relied on the "public interest standard" set forth in the

Communications Act of 1934 to govern the regulation and

licensing of broadcasters. 47 U.S.C. 303; see also id. 
 

307(a), 309(a), 310(d). 

 ACT's petition was denied by the Commission in August

1992. In re Petition For Declaratory Relief Regarding Anti-
 

Smoking Messages Filed by Action for Children's Television, 7
 

F.C.C.R. 5466 (1992). The FCC said that this issue had been

raised and resolved in the 1970 proceedings brought by ASH,

and that ACT had presented nothing new. The Commission

stated that it "continue[d] to believe that the Cigarette Act

itself is properly looked to as defining both the conduct

that is prohibited [with respect to cigarette advertising]

and the remedies that are available to redress violations."

Id. It is undisputed that the Department of Justice, not the
 

FCC, is exclusively charged with enforcing the provisions of

the Cigarette Act. See 15 U.S.C. 1339. ACT now petitions
 

this court for review.2 

 

 2It appears that ACT, which had been a Massachusetts
corporation, was formally dissolved as of December 31, 1992,
after its petition was filed in this court. By letter, the
FCC says that ACT's dissolution "raises the question whether
it continues to be a party aggrieved" by the FCC's action.
In response ACT points out that under Massachusetts law, a
dissolved corporation "shall nevertheless be continued as a
body corporate for three years . . . for the purpose of
prosecuting or defending suits by or against it." Mass. G.L.

 -4-

 An agency's decision not to undertake a new project,
 

regulation, or enforcement action has been treated by courts

as a somewhat unusual animal in the menagerie of agency

actions that may be presented for judicial review. Of

course, where there is a statutory obligation on the agency

to take a relatively specific action, a court might easily

conclude that it had both a standard to apply to a shirking

agency and a duty to enforce the standard. More often,

agencies make decisions not to act under rather broad

statutory standards or, as is typically true of enforcement

actions, under a general mandate to enforce the law. 

 In such cases courts have been reluctant to second-guess

agencies when they decline to act. In some areas,

paralleling prosecutorial decisions not to seek indictment,

courts are reluctant to intervene at all; in others, they

have recognized great discretion in the agency when it

declines to act and required only minimal justification. See
 

Heckler v. Chaney, 470 U.S. 821 (1985); United Church of
 

Christ v. FCC, 911 F.2d 813 (D.C. Cir. 1990). As the circuit
 

most experienced in these matters said in another case,

 

ch. 155, 51; see also City Communications, Inc. v. Detroit,
 
888 F.2d 1081, 1086-87 (6th Cir. 1989) (looking to state
corporate law to determine standing of dissolved
corporation). Given the statute coupled with the FCC's
posture on the issue, we think that denial of the petition on
the merits is the proper course.

 -5-

Natural Resources Defense Council, Inc. v. SEC, 606 F.2d
 

1031, 1046 (D.C. Cir. 1979) (citations omitted):

 An agency's discretionary decision not to regulate
 
 a given activity is inevitably based, in large
 measure, on factors not inherently susceptible to
 judicial resolution -- e.g., internal management
 
 considerations as to budget and personnel;
 evaluations of its own competence; weighing of
 competing policies within a broad statutory
 framework. 

 This court has made similar observations, see, e.g.,
 

Ward v. Skinner, 943 F.2d 157, 161 (1st Cir. 1991), and the
 

standard of deference thus adopted controls this case. We

need not conclude that the FCC's refusal to undertake a rule-

making is automatically immune from judicial review, no

matter how egregious the occasion or how troubling the

agency's explanation. Here, the FCC's explanation is quite

rational. In sum, the agency ruled that Congress provided a

general ban on television cigarette advertising as part of a

"comprehensive" federal program, 15 U.S.C. 1331, and, if

the ban is being infringed at the margins, Department of

Justice enforcement is the preferable course. Given the

FCC's broad discretion as to how to deploy its limited

resources, this is an adequate explanation.

 ACT says that the explanation is faulty to the extent

that hidden commercials are a "loophole" in the law and thus

 -6-

beyond the reach of the Department of Justice.3 Even if

this were so, it would not make the FCC's position

unreasonable. Instead, it could rationally leave to Congress

the task of adjusting the balance it struck in its

"comprehensive" statute. Plugging loopholes might also be a
 

rational goal for the agency (we have no occasion here to

consider preemption arguments); but agency resources are

limited and selecting which rational goals to pursue is part

of the agency's function.

 There is even less to ACT's alternative criticism that

the FCC's decision in this case is inconsistent with its

reasoning in its earlier decision declining to act on ASH's

petition. ACT argues that the FCC there declined to act

because it found a lack of evidence that hidden commercials

were a significant problem and, ACT says, it has now provided

the missing evidence. But the FCC went on to say in the ASH
 

case that, if the problem proved real, the solution would be

"to secure full and effective compliance with the 1969 law,

and not to deal with it by offsetting anti-smoking messages."

27 F.C.C.2d at 458 n.5. There is no inconsistency.

 The petition for review is denied.
 

 

 3There is in fact some indication that the Department of
Justice has taken the view that hidden commercials violate
the statute and has written to cigarette companies and
broadcasters warning them of its position. Whether or not
this is the Department's present view is not material.

 -7-